Sharon Blount-Baker Circuit Clerk
2017-Nov-08  16:26:09
17CV-17-587
C21D01 : 70 Pages

## IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
## CIVIL DIVISION

**JOSHUA SHARP**                                                                 **PLAINTIFF**

VS.                              CASE NO. _____

**STATE FARM FIRE AND CASUALTY COMPANY**
**& JOHN DOES I-X**                                              **DEFENDANTS**

### COMPLAINT

COMES NOW, the Plaintiff, Joshua Sharp, and for this Complaint and cause of action against Defendants, State Farm Fire and Casualty Company and John Does I-X, does state and allege as follows:

1. That the Plaintiff, Joshua Sharp, is and was at all times relevant and material to this case a citizen and resident of Alma, Crawford County, Arkansas.

2. That the Defendant, State Farm Fire and Casualty Company, is and was at all times relevant and material to this case an Illinois corporation, a foreign for-profit insurance company, and was registered and doing business in the State of Arkansas.

3. That this is an action for damages suffered by the Plaintiff due to a breach of contract claim against State Farm Fire and Casualty Company, and related causes of action set forth more fully herein.

4. Venue and jurisdiction are proper in this County and District pursuant to ARK. CODE ANN. § 16-60-101 and ARK. CODE ANN. § 16-13-201.



EXHIBIT
A

5. That, further identified as John Does I-X in Plaintiff's Complaint are other responsible parties and other possible agents for State Farm Fire and Casualty Company. That John Does I-X are persons, corporations, or other responsible parties, and their agents, officers, employees, or contractors. The identities of these John Doe defendants, despite the Plaintiff's best information, is unknown at this time.

6. That attached hereto as Exhibit "A" is the John Doe Affidavit pursuant to ARK. CODE ANN. § 16-56-125 regarding the identities and whereabouts of Jane and John Does I-X.

7. That on or about November 9, 2016, the Plaintiff, Joshua Sharp's, home located at 8277 Highway 282, Alma, AR 72921 was broken into and a majority of the contents were either stolen or vandalized.

8. That, on the date of the loss, Joshua Sharp's personal property was covered by State Farm Fire and Casualty Company Renter's Policy Number 04-BU-C433-0 in the amount of $30,000.00. A copy of the declarations page of Policy Number 04-BU-C433-0 is attached hereto as Exhibit "B." A copy of the standard-form Renter's Policy Number FP-7954, which sets forth the terms and conditions of Policy Number 04-BU-C433-0 is attached hereto as Exhibit "C."

9. That, on the date of the loss, Joshua Sharp's personal property included three (3) watches, particularly, a Rolex Submariner Watch Model # 11661A30B97 (Serial # 29Q5E790), a Rolex Yacht-Master Watch Model # 116622 (Serial # 81A292C2), and a Breitling Avenger II Seawolf Watch (Serial # 2885687), which were stolen from his home.

10. That, on the date of the loss, the three (3) watches referenced in the preceding paragraph were covered by State Farm Fire and Casualty Company Personal Articles Policy Number 04-BU-S658-7 in the amount of $24,425.00. That, particularly, the Rolex

Submariner watch was insured for $8,550.00, the Rolex Yacht-Master watch was insured for $11,550.00, and the Breitling Avenger II Seawolf watch was insured for $4,325.00. A copy of the declarations page of Policy Number 04-BU-S658-7 is attached hereto as Exhibit "D." A copy of the standard-form Personal Articles Policy Number FP-7940.2, which sets forth the terms and conditions of Policy Number 04-BU-S658-7 is attached hereto as Exhibit "E."

11. That, in order to obtain the Personal Articles policy referenced in the preceding paragraph, Joshua Sharp was required to provide State Farm Fire and Casualty Company with proof of ownership and supporting documentation for valuing the three (3) watches referenced in the preceding paragraph. That State Farm Fire and Casualty Company is currently in possession of these documents and has had them since well before the date of the loss that is the subject of this case.

12. That Joshua Sharp promptly reported this theft to the Crawford County Sheriff's Office on November 9, 2016.

13. That Joshua Sharp promptly reported this theft to State Farm Fire and Casualty Company, submitting a "Loss Inventory" on November 11, 2016, and updating/supplementing the "Loss Inventory" on November 13, 2016 and November 16, 2016.

14. That Joshua Sharp gave a recorded statement to State Farm Fire and Casualty Company on November 17, 2016.

15. That Joshua Sharp submitted to an examination under oath conducted by a lawyer representing State Farm Fire and Casualty Company on September 6, 2017.

16. That Joshua Sharp has cooperated with State Farm Fire and Casualty Company throughout the course of their investigation by submitting to interviews and providing

supporting documents, including, but not limited to, photographs, receipts, telephone records, tax returns, bank account records, and lists of witnesses.

17. That State Farm Fire and Casualty Company has a contractual duty to compensate Joshua Sharp for the loss he sustained on November 9, 2016.

18. That, despite Joshua Sharp's cooperation, State Farm Fire and Casualty Company has failed to compensate Joshua Sharp for the loss he sustained on November 9, 2016.

19. That, on October 30, 2017, Joshua Sharp, by and through his attorney, made a written demand including an itemized spreadsheet of the items of personal property that were stolen on November 9, 2016.   That this demand letter and spreadsheet included references to supporting documents such as receipts and photographs, as well as contact information for witnesses that can confirm Joshua Sharp's ownership of many of the listed items.

20. That State Farm Fire and Casualty Company has in its possession the supporting documents referenced in the preceding paragraph.

21. That, State Farm Fire and Casualty Company has in its possession documents that prove Joshua Sharp's ownership of the three (3) watches covered by State Farm Fire and Casualty Company Personal Articles Policy Number 04-BU-S658-7 in the amount of $24,425.00.

22. That, State Farm Fire and Casualty Company has in its possession receipts, contact information for witnesses, photographs, or a combination of the three, all in support of Joshua Sharp's ownership of covered personal property in the amount of $36,399.75. The policy limits of State Farm Fire and Casualty Company Renter's Policy Number 04-BU-C433-0 is $30,000.00.

23. That, State Farm Fire and Casualty Company has in its possession receipts, contact information for witnesses, photographs, and other supporting documents, that demonstrate Joshua Sharp's ownership of personal property in excess of the combined policy limits of the two insurance policies—$54,425.00.

24. That, on November 2, 2017, State Farm Fire and Casualty Company, by and through it attorney, sent a letter in response to Joshua Sharp's October 30, 2017 demand letter and proof of loss.   That, in this letter, State Farm Fire and Casualty Company neither approved nor denied Joshua Sharp's claim, but rather asked:

> At Mr. Sharp's EUO, he testified that he would obtain copies of receipts or credit card statements for many of the items he claimed were stolen (and for which he had not already provided proof of purchase).  Is he going to provide any more receipts or statements?

> Also, please note that on the day of the reported theft your client increased his coverage on his renter's policy to $50,000.

25. That Joshua Sharp did not increase his coverage on his renter's policy to $50,000.00. Rather, Joshua Sharp had inquired about increasing the amount of coverage on his renter's policy because he had purchased some pieces of memorabilia, but was told that he would need to increase the amount of coverage on his personal articles policy.  That this had not been done at the time of the loss because Joshua Sharp had not yet received the new pieces of memorabilia from the dealer.

26. That State Farm Fire and Casualty Company has a contractual duty to compensate Joshua Sharp for the loss he sustained on November 9, 2016.

27. That, despite Joshua Sharp's cooperation, State Farm Fire and Casualty Company has failed to compensate Joshua Sharp for the loss he sustained on November 9, 2016.

28. That, other than the response described in the paragraph 24, State Farm Fire and Casualty

Company has offered no explanation for its failure to compensate Joshua Sharp for the loss he sustained on November 9, 2016.

29. That the Defendant, State Farm Fire and Casualty Company, is liable for breach of contract in the following particulars, to-wit:

    a. That, between Joshua Sharp and State Farm Fire and Casualty Company, there existed two (2) valid and enforceable contracts;

    b. That the contracts required State Farm Fire and Casualty Company to pay the cost of repairing or replacing the stolen property;

    c. That the Plaintiff did what the contracts required of him, namely making timely payment of insurance premiums and submitting to, and cooperating with, State Farm Fire and Casualty Company's investigation into the loss; and

    d. That State Farm Fire and Casualty Company did not do what the contracts required of it, namely that it failed to compensate Joshua Sharp for the loss he sustained on November 9, 2017.

30. That the Plaintiff is entitled to compensatory damages against the Defendant, State Farm Fire and Casualty Company, all as the evidence may show.

31. That, pursuant to ARK. CODE ANN. § 23-79-208, the Plaintiff is entitled to an additional twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

32. That the Plaintiff is entitled to pre-judgment interest, post-judgment interest, and costs. That the attorney fees should begin to accrue since the time of the loss through the date of the final resolution of this matter and that prejudgment interest is also warranted since the amount in controversy is a sum certain.

33. That the Plaintiff is entitled to punitive damages because State Farm Fire and Casualty Company knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in damage to Joshua Sharp and it has continued its course of conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

34. That the Plaintiff is entitled to punitive damages for State Farm Fire and Casualty Company's willful, wanton, and reckless disregard in delaying and avoiding payment.

35. That the Plaintiff demands a jury trial.

## COUNT I
## Breach of Contract

36. Plaintiff re-adopts and re-alleges paragraphs 1 through 35.

37. That the Defendant is liable for breach of contract in the following particulars, to-wit:

    a. That, between Joshua Sharp and State Farm Fire and Casualty Company, there existed two (2) valid and enforceable contracts;

    b. That the contracts required State Farm Fire and Casualty Company to pay the cost of repairing or replacing the stolen property;

    c. That the Plaintiff did what the contracts required of him, namely making timely payment of insurance premiums and submitting to, and cooperating with, State Farm Fire and Casualty Company's investigation into the loss; and

    d. That State Farm Fire and Casualty Company did not do what the contracts required of it, namely that it failed to compensate Joshua Sharp for the loss he sustained on November 9, 2017.

38. That the failure of State Farm Fire and Casualty Company to compensate Joshua Sharp for the loss he sustained on November 9, 2017 was the direct and proximate cause of the

injury/loss suffered by the Plaintiff, Joshua Sharp.

## COUNT II
### Unjust Enrichment

39. Plaintiff re-adopts and re-alleges paragraphs 1 through 38.

40. That the Defendant is liable for unjust enrichment in the following particulars, to-wit:

   a.  That, Joshua Sharp paid insurance premiums for both the Renter's Policy and the Personal Articles Policy to State Farm Fire and Casualty Company, who received the benefit of such insurance premium payments;

   b.  That the circumstances were such that Joshua Sharp reasonably expected to be paid the value of such insurance premiums in that he expected to receive payment for his loss sustained in the event of a covered hazard;

   c.  That State Farm Fire and Casualty Company was aware that Joshua Sharp was providing such insurance premium payments with the expectation of receiving payment for his loss sustained in the event of a covered hazard and State Farm Fire and Casualty Company accepted the payments; and

   d.  The reasonable value of such money received by State Farm Fire and Casualty Company is the total amount of premiums paid by Joshua Sharp, all as the evidence may show.

41. That the acceptance of insurance premium payments from Joshua Sharp and State Farm Fire and Casualty Company's subsequent failure to compensate Joshua Sharp for his loss sustained in the event of a covered hazard, namely the covered loss he sustained on November 9, 2017, was the direct and proximate cause of the injury/loss suffered by the Plaintiff, Joshua Sharp.

## COUNT III
### Promissory Estoppel

42. Plaintiff re-adopts and re-alleges paragraphs 1 through 41.

43. That the Defendant is liable for promissory estoppel in the following particulars, to-wit:

    a. That, State Farm Fire and Casualty Company made promises to Joshua Sharp in that it offered coverage for his personal property via State Farm Fire and Casualty Company Renter's Policy Number 04-BU-C433-0 and Personal Articles Policy Number 04-BU-S658-7;

    b. That State Farm Fire and Casualty Company should reasonably have expected Joshua Sharp to act in reliance on the promises;

    c. That Joshua Sharp acted in reliance on the promises to his detriment, in that he abstained from insuring his personal property through another insurance company; and

    d. That injustice can only be avoided by enforcement of the promises that State Farm Fire and Casualty Company made to Joshua Sharp to cover his personal property from loss.

44. That Joshua Sharp's reliance on the promises of State Farm Fire and Casualty Company and the Defendant's subsequent failure to compensate Joshua Sharp for his loss sustained on November 9, 2017, was the direct and proximate cause of the injury/loss suffered by the Plaintiff, Joshua Sharp.

## COUNT IV
### Conversion of Personal Property

45. Plaintiff re-adopts and re-alleges paragraphs 1 through 44.

46. That the Defendant is liable for conversion in the following particulars, to-wit:

a. That Joshua Sharp owned the money that he used to pay insurance premiums to State Farm Fire and Casualty Company; and

b. That State Farm Fire and Casualty Company intentionally took or exercised dominion or control over the insurance premiums in violation of Joshua Sharp's rights, in that it accepted the insurance premiums and then failed to compensate Joshua Sharp for his loss sustained on November 9, 2016.

47. That State Farm Fire and Casualty Company's intentional taking or exercise of dominion or control over Joshua Sharp's insurance premiums, in that it accepted the insurance premiums and then failed to compensate Joshua Sharp for his loss sustained on November 9, 2016, was the direct and proximate cause of the injury/loss suffered by the Plaintiff, Joshua Sharp.

### COUNT V
### Bad Faith

48. Plaintiff re-adopts and re-alleges paragraphs 1 through 47.

49. That the Defendant is liable for bad faith in the following particulars, to-wit:

a. That, the Plaintiff, Joshua Sharp, sustained damages in that many items of his personal property were stolen on November 9, 2017;

b. That, State Farm Fire and Casualty Company acted in bad faith in an attempt to avoid liability under its policies issued to Joshua Sharp, namely that it;

i. Has in its possession documents that prove Joshua Sharp's ownership of the three (3) watches covered by State Farm Fire and Casualty Company Personal Articles Policy Number 04-BU-S658-7 in the amount of $24,425.00. That, in order to obtain this Personal Articles policy, Joshua Sharp was required to provide State Farm Fire and Casualty Company

with proof of ownership and supporting documentation for valuing the three (3) watches. That State Farm Fire and Casualty Company has had these supporting documents ever since the policy was issued, well before the date of the loss that is the subject of this case.

ii. Has in its possession receipts, contact information for witnesses, photographs, or a combination of the three, all in support of Joshua Sharp's ownership of covered personal property in the amount of $36,399.75, an amount in excess of the $30,000.00 policy limits of State Farm Fire and Casualty Company Renter's Policy Number 04-BU-C433-0.

iii. Has been aware of the loss since, at most, two days after the loss, November 11, 2016.

iv. Has in its possession the "Loss Inventory" submitted by Joshua Sharp on November 11, 2016, November 13, 2016, and November 16, 2016.

v. Has is in its possession Joshua Sharp's recorded statement taken on November 17, 2016.

vi. By and through its attorney, took Joshua Sharp's examination under oath on September 6, 2017.

vii. Has neither approved nor denied Joshua Sharp's claim.

viii. Has offered no explanation for its failure to compensate Joshua Sharp for the loss he sustained on November 9, 2017 other than the inquiries quoted in paragraph 24.

c. That, such conduct proximately caused damage to Joshua Sharp.

50. That, pursuant to *Aetna Casualty and Surety Company v. Broadway Arms Corporation*, State Farm Fire and Casualty Company's actions described herein constitute affirmative misconduct, without a good faith defense, and the misconduct was dishonest, malicious, or oppressive, and done in an attempt to avoid its liability under State Farm Fire and Casualty Company Personal Articles Policy Number 04-BU-S658-7 and Renter's Policy Number 04-BU-C433-0. *See* 281 Ark. 128, 665 S.W.2d 463 (1984). That State Farm Fire and Casualty Company's conduct and the surrounding circumstances are such that actual malice may be inferred therefrom.

51. That State Farm Fire and Casualty Company's acting in bad faith in an attempt to avoid liability under its policies was the direct and proximate cause of the injury/loss suffered by the Plaintiff, Joshua Sharp.

WHEREFORE, the Plaintiff prays for judgment against the Defendants as hereinafter set forth.

## DEMAND FOR JURY TRIAL

1. Plaintiff re-adopts and re-alleges paragraphs 1-51 as if fully set forth herein.

2. Plaintiff demands a trial by jury.

3. Plaintiff reserves the right to amend this Complaint, including the addition or deletion of claims and parties as warranted by discovery.

## DAMAGES

1. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and the additional twelve percent (12%) damages upon the amount of loss pursuant to ARK. CODE ANN. § 23-79-208.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendant on each of the above-referenced claims and Causes of Action, and as follows:

1. All compensatory damages for the coverage provided in State Farm Fire and Casualty Company Renter's Policy Number 04-BU-C433-0 and Personal Articles Policy Number 04-BU-S658-7;

2. All compensatory damages permitted by Arkansas law;

3. Punitive damages;

4. For Plaintiff's reasonable attorney's fees;

5. For pre-judgment interest;

6. For Plaintiff's costs incurred herein, together with interest thereon at the highest lawful rate from the date of judgment until paid in full;

7. For the additional twelve percent (12%) damages upon the amount of loss pursuant to ARK. CODE ANN. § 23-79-208;

8. For all other relief requested herein; and

9. For such other relief as the Court deems just and proper.

WHEREFORE, the Plaintiff, Joshua Sharp, prays for judgment against the Defendant, State Farm Fire and Casualty Company, for all elements of damages set forth herein, all as the evidence may show in a sum and amount of damages to be determined by a jury at trial in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, and for all other damages, including all general, special, and compensatory damages permitted under Arkansas law, punitive damages, all costs, attorney's fees, and interest, and the additional twelve percent (12%) damages upon the amount of loss pursuant to ARK. CODE ANN. § 23-79-208, and for all

other just and proper relief to which the Plaintiff is shown to be entitled, whether prayed for herein or not.

Respectfully submitted on behalf of

Joshua Sharp

By:

Brinkley Cook-Campbell
Arkansas Bar No. 2015236
Oklahoma Bar No. 32901
Attorney for Plaintiff
The Law Offices of Craig L. Cook
Attorney at Law
319 North 8th Street
Fort Smith, AR 72901
Phone No.  (479)783-8000
Fax No.  (479)783-8002
brinkley@lawofficesofcraiglcook.com

## VERIFICATION

I, Joshua Sharp, state upon oath that the statements contained in the above and foregoing COMPLAINT are true and correct to the best of my knowledge and belief.

Joshua Sharp

## ACKNOWLEDGMENT

STATE OF Arkansas

COUNTY OF Sebastian

On this, the 8 day of November, 2017, before me, the undersigned officer, personally appeared Joshua Sharp, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

Notary Public

My Commission Expires:

4-5-2024

AMY SEITER
Arkansas - Sebastian County
Notary Public - Comm# 12397907
My Commission Expires Apr 5, 2024

# EXHIBIT "A"

## RE: JOSHUA SHARP

## JOHN DOE AFFIDAVIT

## IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
## CIVIL DIVISION

**JOSHUA SHARP**                                                         **PLAINTIFF**

VS.                              CASE NO. _____

**STATE FARM FIRE AND CASUALTY COMPANY**
**& JOHN DOES I-X**                                                       **DEFENDANTS**

### AFFIDAVIT

Comes now the Affiant pursuant to ARK. CODE ANN. § 16-56-125 and for his affidavit

doth state, under oath, as follows:

That several of the possible defendants are unknown, which will be designated as John

Doe I, John Doe II, John Doe III, etc., which is necessary for the tolling of the Statute of

Limitations; that should the tortfeasor(s) become known, that the Complaint will be amended to

re-substitute the real name for the pseudo-name.

FURTHER THE AFFIANT SAYETH NOT.

BY: _Brinkley Cook-Campbell_

Brinkley Cook-Campbell
ABN: 2015236
OBN: 32901
The Law Offices of Craig L. Cook
Attorney at Law
319 North 8th Street
Fort Smith, AR 72901
Phone No. (479)783-8000
Fax No. (479)783-8002

# EXHIBIT #A

Page 1 of 2

STATE OF ARKANSAS )

COUNTY OF SEBASTIAN )

On this the ___ day of November, 2017, before me, the undersigned officer, personally appeared Brinkley Cook-Campbell, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

AMY SEITER
Arkansas - Sebastian County
Notary Public - Comm# 12397907
My Commission Expires Apr 5, 2024

Notary Public

Page **2** of **2**

EXHIBIT "B"

RE: JOSHUA SHARP

RENTER'S POLICY NUMBER 04-BU-C443-0

State Farm Fire and Casualty Company
A Stock Company With Home Offices in Bloomington, Illinois

**DECLARATIONS PAGE**

*4700 South Providence*
*Columbia, MO 65217-0001*

Named Insured

H-22-9E39-FB5B     H  F

SHARP, JOSHUA
PO BOX 3
RUDY AR  72952-0003

| Policy Number | 04-BU-C433-0 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | JUN 29 2016 | JUN 29 2017 |

The policy period begins and ends at 12:01 am
standard time at the residence premises.

**ENTERS POLICY**

tomatic Renewal - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the
miums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the
rtgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

:ation of Residence Premises
'7 HIGHWAY 282
vIA AR 72921

ozone: 13

| verages & Property SECTION I | Limits of Liability | Inflation Coverage Index: 240.3 Deductibles - Section I | | |
|---|---|---|---|---|
| Personal Property Loss of Use | $    30,000 Actual Loss Sustained | 5% Earthquake Other Losses | $ | 500 |
| **SECTION II** Personal Liability (Each Occurrence) | $   100,000 | | | |
| Damage to Property of Others | $       500 | In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to policy. | | |
| Medical Payments to Others (Each Person) | $     1,000 | | | |

| s Settlement Provision (See Policy) Limited Replacement Cost - Coverage B | | Policy Premium | | $     315.00 |
|---|---|---|---|---|
| | | Earthquake Premium | 21.00 | (Included) |
| rms, Options, & Endorsements | | Sewer & Drain | 5.00 | (Included) |
| inters Policy | FP-7954 | Discounts Applied: | | |
| inters Policy Endorsement | FE-3418 | Home Alert | | |
| ick-Up Dwell/Listed Property | FE-5706.3 | Home/Auto | | |
| nendatory Endorsement Renters | FE-2343 | Claim Record | | |
| irthquake Incl Masonry Veneer | FE-7301.4 | | | |

Other limits and exclusions may apply - refer to your policy

ir policy consists of this page, any endorsements
the policy form. Please keep these together.

7001.6C

Continued on Reverse

:41  1 61  I

S,B,L,8O          Prepared     JUN 30 2016

JOHN WOOD
479-632-4707

555-7020     555-7020.I  Rev. 10-2002 (ol1039lc)

CONTINUED FROM FRONT SIDE

tate Farm® works hard to offer you the best combination of price, service, and protection.  The amount you pay for
omeowners insurance is determined by many factors such as the coverages you have, the type of construction, the
kelihood of future claims, and information from consumer reports.

our premium was influenced by information from consumer reports:

lumber of non-weather non-catastrophe claims in the last 60 months; Number of accounts ever 30 days or more late; Number
f consumer initiated inquiries for credit seeking purposes in the last 24 months; Average number of months open for all
ccounts.

ou have the right to request, no more than once annually, that your policy be re-rated using a current credit-based
surance score.  Re-rating could result in a lower rate, no change in rate, or a higher rate.

lease refer to the enclosed insert for additional details.

01f0306g
Rev. 09-2005

## FE-3418 RENTERS POLICY ENDORSEMENT (Arkansas)

### DEFINITIONS

Definitions 6. and 7. are replaced by the following:

6. "motor vehicle", when used in Section II of this policy, means:

   a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational vehicle" while off an insured location. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an insured location. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an insured. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an insured while off an insured location. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

The following are not motor vehicles:

   a. a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

   b. a motorized land vehicle in dead storage on an insured location;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

   e. a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

   a. bodily injury; or

   b. property damage;

   during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

Definitions 11. and 12. are added:

11. "fungus" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

12. "State Farm Companies" means one or more of the following:

   a. State Farm Mutual Automobile Insurance Company;

   b. State Farm Fire and Casualty Company; and

   c. subsidiaries or affiliates of either a. or b. above.

### SECTION I – COVERAGES

### COVERAGE B – PERSONAL PROPERTY

Special Limits of Liability is replaced by the following:

Special Limits of Liability. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware and platinum;

   b. $1,500 on property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, while on the residence premises. This coverage is limited to $750 on such property away from the residence premises.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

CONTINUED

c.  $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d.  $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e.  $1,500 on trailers not used with watercraft;

f.  $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

g.  $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

h.  $2,500 for loss by theft of firearms;

i.  $2,500 for loss by theft of silverware and goldware;

j.  $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

k.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

l.  $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., **Property Not Covered**, is replaced by the following:

2.  **Property Not Covered**. We do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds or fish;

c.  any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in **Special Limits of Liability**, item l. We do cover those not licensed for use on public highways which are:

(1)  used solely to service the **insured location**; or

(2)  designed for assisting the handicapped;

d.  devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or other media that may be used with these devices or instruments while in the vehicle;

e.  aircraft and parts;

f.  property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g.  property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h.  property rented or held for rental to others away from the **residence premises**;

i.  any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

j.  books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l.  purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

m.  contraband, or any property used in the course of illegal consumption, possession, import, export or trade; or

n.  outdoor hardscape property used for aesthetic purposes except as provided in SECTION I — ADDITIONAL COVERAGES.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

COVERAGE C – LOSS OF USE

Item 3., Prohibited Use, is replaced by the following:

3. **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;

   b. the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   We do not cover loss or expense due to cancellation of a lease or agreement.

SECTION I – ADDITIONAL COVERAGES

Items 1., 3. and 12. are replaced by the following:

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. **Trees, Shrubs and Landscaping.**

3. **Trees, Shrubs and Landscaping.** We cover outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 10% of the amount shown in the **Declarations** for COVERAGE B – PERSONAL PROPERTY. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

12. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

   a. perils described in SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. decay, deterioration, insect damage or vermin damage, all that are hidden from view, of a:

      (1) connector; or

      (2) structural member of a building;

      unless the presence of such damage is known to an insured prior to collapse;

   c. weight of contents, equipment, animals or people;

   d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

   e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d., and e. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

## SECTION I – LOSSES INSURED

### COVERAGE B – PERSONAL PROPERTY

Items 9.b.(3)(c), 12.d., 13.b. and 15. are replaced by the following:

9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

12. d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

13. b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

15. **Sudden and accidental damage to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,500 under this peril for each damaged item described above.**

## SECTION I – LOSSES NOT INSURED

Item 1.c. is replaced by the following:

1. c. Water, meaning:

(1) flood, surface water, waves (including tidal wave, tsunami, and seiche) tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

(4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

The following item is added:

1. g. Fungus, including:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove the **fungus** from covered property or to repair, restore or replace that property;

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**;

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

## SECTION I – CONDITIONS

The following is added to item 5., **Appraisal**:

These procedures are voluntary and non-binding.

Item 7., **Suit Against Us**, is replaced by the following:

7. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within the period of time allowed by law.

The following is added to item 9., **Loss Payment**:

We will not deny a covered claim due to the presence of **fungus** on any property damaged by an otherwise covered loss.

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1.d. are replaced by the following:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an **insured** in suits we defend. Taxed costs do not include attorney fees;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

04-BU-C433-0   ( 1244)

FE-3418
Page 5 of 6

c. reasonable expenses an insured incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

d. interest the insured is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

(1) that part of the damages we pay; or

(2) the Coverage L limit; and

## SECTION II -- CONDITIONS

Item 1., Limit of Liability, is replaced by the following:

1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is the limit for all damages from each occurrence for the policy period in which the bodily injury or property damage first occurs, regardless of the number of insureds, claims made or persons injured. No additional limits or coverage will be available for the occurrence under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for bodily injury to one person as the result of one accident.

## SECTION I AND SECTION II – CONDITIONS

Items 5.b.(3), b.(4) and c., Cancellation, are replaced by the following:

b. (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us or at anniversary, we may cancel if there has been:

(a) fraud or material misrepresentation made by or with your knowledge in obtaining this policy, continuing this policy, or in presenting a claim under this policy;

(b) the occurrence of a material change in the risk which substantially increases any hazard insured against after this policy was issued;

(c) violation of any local fire, health, safety, building, or construction regulation or ordinances with respect to any insured property or the occupancy of the property, which substantially increases any hazard insured against under this policy; or

(d) a material violation of a material provision of this policy.

We may cancel this policy by notifying you at least 20 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

The following is added to item 8., Subrogation:

We are entitled to a recovery only after the insured has been fully compensated under the applicable coverage in the policy. Nothing in this provision shall prevent us from bringing an action against an alleged tortfeasor.

The following conditions are added:

11. Premium.

a. Unless as otherwise provided by an alternative payment plan in effect with the State Farm Companies with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued Declarations.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the State Farm Companies;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the State Farm Companies. The State Farm Companies do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the State Farm Companies has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

d. Your purchase of this policy may allow:

(1) you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the State Farm Companies, subject to their applicable eligibility rules; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

FE-3418
Page 6 of 6

(2) the premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the State Farm Companies or by an organization that has entered into an agreement or contract with the State Farm Companies. The State Farm Companies do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.** We have the right but are not obligated to perform the following:

a. make inspections and surveys of the **insured location** at any time;

b. provide you with reports on conditions we find; or

c. recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

d. warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

13. **Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

14. **Change of Policy Address.** We may change the named insured's policy address as shown in the Declarations and in our records to the most recent address provided to us by:

a. you; or

b. the United States Postal Service.

OPTIONAL POLICY PROVISIONS

Option BP – Business Property is replaced by the following:

Option BP – Business Property. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the Declarations for this option.

Option HC – Home Computer is replaced by the following:

Option HC – Home Computer. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item j., is increased to be the amount shown in the Declarations for this option.

All other policy provisions apply.

FE-3418

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

(CONTINUED)

04-BU-C433-0   ( 1245)

FE-5706.3
Page 1 of 1

## FE-5706.3 BACK-UP OF SEWER OR DRAIN ENDORSEMENT ($10,000 Limit)

The following is added to SECTION I – ADDITIONAL COVERAGES:

Back-up of Sewer or Drain. We cover the dwelling used as a private residence on the residence premises shown in the Declarations and only the following personal property, while located in the dwelling:

a. clothes washers and dryers;

b. food freezers and the food in them;

c. refrigerators;

d. ranges;

e. portable dishwashers; and

f. dehumidifiers;

for direct physical loss caused by the back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

(1) from outside the residence premises plumbing system that enters through a sewer or drain located inside the interior of the dwelling; or

(2) which enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the dwelling designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

(1) losses caused by your negligence;

(2) losses that occur or are in progress within the first 5 days of the inception of this endorsement, unless coverage is continued as part of your policy renewal; or

(3) any personal property other than a. through f. listed above.

c. The limit for this coverage shall not exceed $10,000 in any one occurrence.

The deductible for each loss under this coverage is the amount shown in the Declarations under DEDUCTIBLES – SECTION I or $1,000, whichever is greater.

For the purpose of this endorsement only, SECTION I – LOSSES INSURED, item 12.c. is deleted from the policy.

SECTION I – LOSSES NOT INSURED

Item 2.c. Water is replaced by:

2. c. Water, meaning:

(1) flood, surface water, waves (including tidal wave, tsunami, and seiche) tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not; except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-up of Sewer or Drain;

(2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-up of Sewer or Drain;

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure, or

(4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

For the purpose of this endorsement only, SECTION I – CONDITIONS, Other Insurance is replaced by:

Other Insurance. This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

FE-5706.3

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

(CONTINUED)

 **FE-2343 AMENDATORY ENDORSEMENT — RENTERS POLICY (Arkansas)**

**DECLARATIONS CONTINUED**

The following is added:

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

**SECTION I AND SECTION II – CONDITIONS**

Item 8. is replaced by the following:

8. Subrogation and Reimbursement.

a. Subrogation.

(1) Applicable to SECTION I -- YOUR PROPERTY:

If any insured to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That insured must do everything necessary to secure our rights and must do nothing after loss to impair them. But an insured may waive in writing before a loss all rights of recovery against any person.

(2) Applicable to SECTION II -- YOUR LIABILITY:

If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An insured must do nothing after loss to impair them. At our request, an insured will bring suit or transfer those rights to us and help us enforce them.

We are entitled to a recovery only after the insured has been fully compensated under the applicable coverage in the policy. Nothing in this provision shall prevent us from bringing an action against an alleged tortfeasor.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

b. Reimbursement.

If we make payment under this policy and any insured to or for whom we make payment recovers or has recovered from another person or organization, then the insured to or for whom we make payment must:

(1) hold in trust for us the proceeds of any recovery; and

(2) reimburse us to the extent of our payment.

All other policy provisions apply.

FE-2343

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

(CONTINUED)

04-BU-C433-0   (1246)

FE-7301.4
(7/00)

## EARTHQUAKE AND VOLCANIC EXPLOSION ENDORSEMENT

1. SECTION I - LOSSES NOT INSURED references to earth-quake and volcanic explosion are deleted. Such insurance as is afforded by Section I of the policy is extended to insure for accidental direct physical loss caused by earth-quake or volcanic explosion.

2. We do not insure under this endorsement for loss caused by or resulting from any earthquake or volcanic explosion that begins before the inception of this endorsement.

   But, if this endorsement replaces earthquake insurance that excludes loss that occurs after the expiration of the policy, we will pay for loss or damage by earthquake, or volcanic explosion that occurs on or after the inception of this endorsement, if the series of earthquake shocks or vol-canic explosions began within 72 hours prior to the incep-tion of this insurance.

3. All earthquake shocks or volcanic explosions that occur within any 72-hour period will constitute a single loss. The expiration of this policy will not reduce the 72-hour period.

4. Deductible: The deductible for loss caused by earthquake or volcanic explosion is the amount determined by applying the deductible percentage (%) shown in the Declarations, separately, to each of the following:

   a. the total COVERAGE A - DWELLING limit shown in the Declarations;

   b. the total DWELLING EXTENSION limit shown in the Declarations; and

   c. the total COVERAGE B - PERSONAL PROPERTY limit shown in the Declarations.

   We will pay only that portion of the loss which exceeds the separate deductibles calculated above. The minimum deductible for each occurrence is $250.

All other policy provisions apply.

FE-7301.4
(7/00)

04-BU-C433-0   ( 1247)

553-1972 AR.I

The following notice is being provided in accordance with Fire Loss Reporting Act of 2003.

# IMPORTANT NOTICE REGARDING FIRE PROTECTION

Did you know that the firefighting ability of your Fire Department helps lower your insurance rates? It's true! The better your firefighters are equipped and trained, the better their access to water for fighting fires, the length of the time it takes for them to arrive at a fire, are a few of the many factors that have an impact on your property insurance rates. Help your fire fighters help you! They need your support, financial, and otherwise. Adequate funding is important to improving the protection that may translate to lower premiums!

553-1972 AR.I (C)

04-BU-C433-0   ( 1248)

553-2977.2

## This Notice Is Being Provided Pursuant To The Federal Fair Credit Reporting Act And Any Applicable State Law

The amount you pay for homeowners insurance is influenced by many factors, including the coverages you have, the type of construction, and the likelihood of future claims. Please refer to your declarations page for information about factors that affect your premium. State Farm° also considers information from consumer reports as a factor in determining your premium. These reports are obtained from LexisNexis Risk Solutions, Inc., a consumer reporting agency. LexisNexis only provides information, does not make any decisions about your insurance, and is unable to provide any reasons for State Farm's decision.

We encourage you to obtain a free copy of the reports used by contacting LexisNexis within 60 days of receiving this notice. Please submit your request for the consumer reports used to:

> LexisNexis Consumer Center
> P. O. Box 105108
> Atlanta, GA 30348
> Phone: 1-800-456-6004
> Internet Address: www.consumerdisclosure.com

If your credit history was adversely influenced by certain life events, such as, catastrophic illness or injury; death of an immediate family member; temporary loss of employment; divorce or identity theft, or military deployment overseas please contact your State Farm agent requesting an additional review of your information. Or, if the information in your consumer reports is incomplete or inaccurate, you have the right to dispute it with LexisNexis. If a correction is made as a result of your dispute, please tell your agent so State Farm may reconsider its decision.

Based on information in consumer reports, your premium is higher than it would have otherwise been if State Farm Fire and Casualty Company had not used consumer report information. You are receiving the most competitive rate State Farm can offer you at this time. If you would like the specific reasons for this action as related to loss history, please call or submit a written request to your State Farm agent within 90 days.

State Farm Fire and Casualty Company
Bloomington, IL

553-2977.2 (C)

EXHIBIT "C"

RE: JOSHUA SHARP

STANDARD-FORM RENTER'S POLICY NUMBER FP-7954



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Renters**
**Policy**

FP-7954

## TABLE OF CONTENTS

### DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

DECLARATIONS CONTINUED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**SECTION I - YOUR PROPERTY**
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
      Coverage B - Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
      Coverage C - Loss of Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
      Additional Coverages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
      Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
   LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
   LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
   LOSS SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
   CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**SECTION II - YOUR LIABILITY**
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
      Coverage L - Personal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
      Coverage M - Medical Payments to Others. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
      Additional Coverages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
   EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
   CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

SECTION I AND SECTION II - CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977

FP-7954

Printed in U.S.A.

## RENTERS POLICY

### DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

### DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations,** any amended **Declarations,** the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business,** or without permission of the owner, is not an **insured**; and

   d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

1

FP-7954

5. "**insured location**" means:

   a. the **residence premises**;

   b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

   c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

   d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

   e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

   f. individual or family cemetery plots or burial vaults owned by an **insured**;

   g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

   h. vacant land owned by or rented to an **insured**. This does not include farm land; and

   i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to **motor vehicle** registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

   b. a trailer or semi-trailer designed for travel on public roads and subject to **motor vehicle** registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle**;

   c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

   d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

   a. **bodily injury**; or

   b. **property damage**;

   during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "**residence premises**" means:

    a. the one, two, three or four-family dwelling, other structures and grounds; or

    b. that part of any other building;

    where you reside and which is shown in the **Declarations**.

FP-7954

## SECTION I - COVERAGES

**COVERAGE B - PERSONAL PROPERTY**

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

   We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware and platinum;

   b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

   c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotia-

   ble instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

   d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

   e. $1,000 on trailers not used with watercraft;

   f. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

   g. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

   h. $2,500 for loss by theft of firearms;

   i. $2,500 for loss by theft of silverware and goldware;

   j. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

   k. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

   a. articles separately described and specifically insured in this or any other insurance;

   b. animals, birds or fish;

   c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

      (1) used solely to service the **insured location**; or

      (2) designed for assisting the handicapped;

3

FP-7954

d. devices or instruments for the recording or repro-
duction of sound permanently attached to an
engine or motor propelled vehicle. We do not cover
tapes, wires, records or other mediums that may be
used with these devices or instruments while in the
vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other
residents not related to an **insured**. We do cover
property of roomers, boarders and other residents
related to an **insured**;

g. property regularly rented or held for rental to others
by an **insured**. This exclusion does not apply to
property of an **insured** in a sleeping room rented to
others by an **insured**;

h. property rented or held for rental to others away
from the **residence premises**;

i. any citizens band radios, radio telephones, radio
transceivers, radio transmitters, radar or laser
detectors, antennas and other similar equipment
permanently attached to an engine or motor pro-
pelled vehicle;

j. books of account, abstracts, drawings, card index
systems and other records. This exclusion does not
apply to any recording or storage media for elec-
tronic data processing. We will cover the cost of
blank books, cards or other blank material plus the
cost of labor you incur for transcribing or copying
such records; or

k. recording or storage media for electronic data pro-
cessing that cannot be replaced with other of like
kind and quality on the current retail market.

### COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured
causes the **residence premises** to become uninhabit-
able, we will cover the necessary increase in cost you
incur to maintain your standard of living for up to 24
months. Our payment is limited to incurred costs for
the shortest of: (a) the time required to repair or
replace the premises; (b) the time required for your
household to settle elsewhere; or (c) 24 months. This
coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that
part of the **residence premises** rented to others or
held for rental by you to become uninhabitable, we will
cover its fair rental value. Payment shall be for the
shortest time required to repair or replace the part of
the premises rented or held for rental, but not to
exceed 12 months. This period of time is not limited by
expiration of this policy. Fair rental value shall not
include any expense that does not continue while that
part of the **residence premises** rented or held for
rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your
use of the **residence premises** because of direct
damage to a neighboring premises by a Loss Insured,
we will cover any resulting Additional Living Expense
and Fair Rental Value. Coverage is for a period not
exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of
a lease or agreement.

### SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the
terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable
expenses you incur in the removal of debris of covered
property damaged by a Loss Insured. This expense is
included in the limit applying to the damaged property.

When the amount payable for the property damage
plus the debris removal exceeds the limit for the dam-
aged property, an additional 5% of that limit is available
for debris removal expense. This additional amount of
insurance does not apply to Additional Coverage, item
3. Trees, Shrubs and Other Plants.

2. **Temporary Repairs.** If damage is caused by a Loss
Insured, we will pay the reasonable and necessary
cost you incur for temporary repairs to covered prop-
erty to protect the property from further immediate
damage or loss. This coverage does not increase the
limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor
trees, shrubs, plants or lawns, on the **residence pre-
mises**, for direct loss caused by the following: Fire or
lightning, Explosion, Riot or civil commotion, Aircraft,
Vehicles (not owned or operated by a resident of the

FP-7954

residence premises), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 10% of the limit of liability shown in the Declarations for COVERAGE B - PERSONAL PROPERTY. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

4. **Fire Department Service Charge**. We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed**. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

    a. We will pay up to $1,000 for:

    (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

    (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

    (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

    No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

    (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

    (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

    (3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

FP-7954

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Building Additions and Alterations**. We cover under Coverage B the building additions, alterations, fixtures, improvements or installations, made or acquired at your expense, to that part of the **residence premises** used exclusively by you. The limit for this coverage shall not exceed 15% of the limit of liability shown in the **Declarations** for COVERAGE B - PERSONAL PROPERTY. This is not an additional amount of insurance.

11. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow.

    We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

    One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

    This coverage does not increase the limit applying to the damaged property.

12. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

13. **Locks**. We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

FP-7954

## INFLATION COVERAGE

The limit of liability shown in the **Declarations** for Coverage B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limit on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limit of liability for Coverage B.

The limit of liability will not be reduced to less than the amount shown in the **Declarations**.

If during the term of this policy the Coverage B limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril does not include loss to outdoor antennas caused directly or indirectly by ice (other than hail), snow or sleet, all whether driven by wind or not.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a **residence premises** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

         (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

(d) of jewelry, watches, fur garments and gar-ments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the res-idence premises of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is cov-ered while at a residence away from home;

(2) watercraft of all types, including their furnish-ings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered prop-erty away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow of** water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler sys-tem, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence pre-mises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appli-ances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass or safety glazing material** which is part of a building, storm door or storm window, and is covered under **SECTION I - ADDITIONAL COVER-AGES, Building Additions and Alterations.**

This peril does not include loss on the **residence pre-mises** if the residence has been vacant for more than 30 consecutive days immediately before the loss.

17. **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

FP-7954

## SECTION I - LOSSES NOT INSURED

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

   b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action**.

   However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

   c. **Water Damage**, meaning:

      (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

      (2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

      (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

   d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

   e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

   f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

   However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

2. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraph 1. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, construction, grading, compaction;

      (3) materials used in construction or repair; or

9

FP-7054

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provision shown in the **Declarations** applies. We will settle covered property losses according to the following.

### COVERAGE B - PERSONAL PROPERTY

1. **B1 - Limited Replacement Cost Loss Settlement.**

   a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

      (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

      (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

      (3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement.**

   a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

FP-7954

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

5. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of

FP-7954

the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

6. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

7. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

8. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

10. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

FP-7954

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. Damage to Property of Others.

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

      (1) if insurance is otherwise provided in this policy;

      (2) caused intentionally by an **insured** who is 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

      (4) arising out of:

         (a) **business** pursuits;

         (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

         (c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. **bodily injury** or **property damage**:

      (1) which is either expected or intended by the **insured**; or

      (2) which is the result of willful and malicious acts of the **insured**;

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

   (a) on an occasional basis for the exclusive use as a residence;

   (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

   (c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

   (1) an aircraft;

   (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

   (3) a watercraft:

      (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

      (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

      (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

      (d) designated as an airboat, air cushion, or similar type of craft; or

      (e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

   (1) the entrustment by any **insured** to any person;

   (2) the supervision by any **insured** of any person;

   (3) any liability statutorily imposed on any **insured**; or

   (4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

FP-7954

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

15

FP-7954

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - Damage to Property of Others, exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury.**

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

16

FP-7954

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

         (b) if the risk has changed substantially since the policy was issued.

         We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

   d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

FP-7954

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the pre-

mises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits.** SECTION II - EXCLU-SIONS, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pur-suits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university and profes-sional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially con-trolled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render pro-fessional services of any nature (other than teaching or school administration). This exclu-sion includes but is not limited to:

(1) computer programming, architectural, engi-neering or industrial design services;

(2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

(1) for **bodily injury** or **property damage** aris-ing out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehi-cles for use with them; or

FP-7954

(b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item j., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY**, Special Limits of Liability on property used or intended for use in a **business**.

2. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

3. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

FP-7954

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

    (a) on an occasional basis for exclusive use as a residence;

    (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

    (c) in part, as an incidental **business** or private garage;

(4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

4. This insurance does not apply to:

  a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

  b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

  c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

  d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

  a. mechanical breakdown, wear and tear, gradual deterioration;

  b. insects or vermin;

  c. inherent vice; or

FP-7954

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Youell*        Secretary        *Michael F Tipson*        President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7954

EXHIBIT "D"

RE: JOSHUA SHARP

PERSONAL ARTICLES POLICY NUMBER 04-BU-S658-7

State Farm Fire and Casualty Company
A Stock Company With Home Offices in Bloomington, Illinois

4700 South Providence
Columbia, MO 65217-0001

Named Insured

H-22-9E39-FB5B      P   F

SHARP, JOSHUA
PO BOX 3
RUDY AR  72952-0003

**DECLARATIONS PAGE**   AMENDED NOV 2 2016

| Policy Number | 04-BU-S658-7 |
| --- | --- |

| Policy Period | Effective Date | Expiration Date |
| --- | --- | --- |
| 12 Months | AUG 26 2016 | AUG 26 2017 |

The policy period begins and ends at 12:01 am standard time at the named insured's address.

ERSONAL ARTICLES POLICY

INFLATION COVERAGE - U.S. Department of Labor
Consumer Price Index: 241.4

TOMATIC RENEWAL - If the POLICY PERIOD is shown as 12 MONTHS, this policy will be renewed automatically subject to premiums, rules and forms in effect for each succeeding policy period.  If this policy is terminated we will give you d the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

| ss of Property | Amount of Insurance | Your policy is amended NOV 2 2016 JEWELRY COVERAGE CHANGED |
| --- | --- | --- |
| velry as scheduled | $    24,425 | |

(SCHEDULE ATTACHED)

| Forms, Options, and Endorsements | | ENDORSEMENT PREMIUM |
| --- | --- | --- |
| ERSONAL ARTICLES POLICY | FP-7940.2 | INCREASE                          $       25.23 |
| OSS SETTLEMENT ENDORSEMENT | FE-3357 | |
| FLATION COVERAGE | OPTION I | |

TICE:  We have the option of repairing or lacing the lost or damaged property at our st.  If we agree to a cash settlement, we will y you no more than our cost to replace the item.

ur policy consists of this page, any endorsements d the policy form.  PLEASE KEEP THESE TOGETHER.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

7070.3C

l68   1 51  I

Prepared   NOV 09 2016

JOHN WOOD
479-632-4707

-7020 c.1  (01f0391c)  Rev. 03-2002

CONTINUED FROM FRONT SIDE

ERSONAL ARTICLES POLICY

| ass of Property | Amount of Insurance | |
|---|---|---|
| | | |
| Forms, Options, and Endorsements | | |

| Polioy Number<br>04-BU-S658-7 | **PERSONAL ARTICLES<br>SCHEDULE** | NOV 2 2016<br>PAGE 001 |
|---|---|---|

H-9E39-FB5B          P  F

SHARP, JOSHUA

Named Insured

CONSUMER PRICE INDEX 241.4
(This Inflation Coverage Index
applies to those items added
or coverage amount changed.)

Property Covered:  Jewelry
                   (Inflation Coverage Applies)

| Item<br>Number | Description | Coverage<br>Amount |
|---|---|---|
| 1 | ROLEX SUBMARINER WATCH STAINLESS STEEL 40MM BLACK<br>DIAL WITH WHITE DOT INDEXES DATE & SECOND HAND BLACK<br>CERACHROM ROTARY BEZEL ON STEEL OYSTER BRACELET<br>MODEL # 116610A30B97 SERIAL # 29Q5E790 | $   8,550 |
| 3 | GENTS ROLEX OYSTER PERPETUAL YACHT-MASTER MODEL<br>116622, 40MM, STEEL AND PLATINUM BEZEL, 31 JEWEL<br>CHRONOMETER MOVEMENT, SAPPHIRE CRYSTAL, WITH OYSTER<br>BRACELET 78860, SERIAL #81A292C2. | $  11,550 |
| 4 added | GENTS BREITLING AVENGER II SEAWOLF WATCH STEEL SATIN<br>FINISH PROFESSIONAL III STEEL S/N 2885687 | $   4,325 |

EXHIBIT "E"

RE: JOSHUA SHARP

STANDARD-FORM PERSONAL ARTICLES POLICY NUMBER FP-7940.2



State Farm®
**Personal Articles
Policy**

FP-7940.2

## TABLE OF CONTENTS

### DECLARATIONS

**Your Name**
**Policy Period**
**Classes of Property**
**Amounts of Insurance**
**Deductibles**

Beginning on Page

TABLE OF CONTENTS .................................................................................................1

PROPERTY COVERED..................................................................................................2

TERRITORIAL LIMITS ..................................................................................................2

LOSSES INSURED AND LOSSES NOT INSURED ....................................................2

CONDITIONS..................................................................................................................3

SPECIAL CONDITIONS.................................................................................................5

OPTIONAL POLICY PROVISIONS................................................................................6

## PERSONAL ARTICLES POLICY

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident in the same household. "We", "us" and "our" refer to the Company shown in the Declarations.

## PROPERTY COVERED

We cover the Classes of Property shown in the Declarations.

## TERRITORIAL LIMITS

We cover the property described while it is anywhere in the world. However, Fine Arts are covered only while within the United States and Canada.

## LOSSES INSURED AND LOSSES NOT INSURED

We insure for accidental direct physical loss or damage to the property covered except loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event which contributes concurrently or in any sequence to the loss or damage.

1. War, including:
   a. undeclared war;
   b. civil war;
   c. insurrection;
   d. rebellion;
   e. revolution;
   f. warlike act by a military force or military personnel;
   g. destruction, seizure or use for a military purpose; or
   h. any effect of any of these.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

2. Seizure or destruction under quarantine or customs regulations.

3. Any order or law of a governmental or municipal authority.

4. Risks of contraband, illegal transportation or trade.

5. Nuclear Hazard, meaning:
   a. any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused; and
   b. any effect of any of these.

   Loss caused by the nuclear hazard is not considered loss caused by fire, explosion or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

6. Mechanical breakdown, wear and tear, gradual deterioration and inherent vice.

7. Vermin or insects.

## SPECIAL EXCLUSIONS

This policy does not apply:

1. if Fine Arts are covered:
   a. to damage caused by any repairing, restoration or retouching process;

   b. to property on exhibition at fairgrounds or on the premises of national or international expositions, unless the premises are covered by this policy.

2. if Sports Equipment is covered:
   a. to loss or damage caused by:

2

(1) any process of refinishing, renovating or repairing;

(2) dampness of atmosphere and/or extremes of temperature;

(3) inherent defect or faulty manufacture;

(4) rust, fouling or explosion of firearms;

b. to breakage, marring, scratching, tearing, or denting unless caused by fire, thieves or accidents to conveyances;

c. to infidelity of Insured's employees or persons to whom the covered property may be entrusted or rented;

d. to loss or damage to:

(1) outboard motors, boats and/or their accessories;

(2) bicycles, their equipment or accessories; and

(3) equipment, clothing or accessories used in connection with the game of golf.

3. if Stamp and Coin Collections are covered:

a. to fading, creasing, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature gradual depreciation, or damage from handling or being worked upon;

b. to disappearance of individual stamps, coins or other items unless the item is described and scheduled with a specific amount of insurance, or if the item is mounted in a volume and the page to which it is attached is also lost;

c. to loss of or damage to property which is:

(1) in the custody of transportation companies unless such shipments are made by railway express or armored car. Shipments by mail are covered only if made by registered mail or insured parcel post; or

(2) not an actual part of a stamp, money or numismatic collection.

d. to theft from any unattended automobile unless in the custody of railway express, armored motor car companies, or while being shipped by registered mail or insured parcel post.

## CONDITIONS

1. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

2. **Concealment or Fraud.** This entire policy will be void if, whether before or after a loss, you have intentionally concealed or misrepresented a material fact or circumstance relating to this insurance.

3. **Loss Settlement.** We have the option of repairing or replacing the lost or damaged property. Unless otherwise stated in this policy, covered property values will be determined at the time of loss or damage. We will pay the cost of repair or replacement, but not more than the smallest of the following amounts:

a. the full amount of our cost to repair the property to its condition immediately prior to the loss or damage;

b. the full amount of our cost to replace the item with one substantially identical to the item lost or damaged;

c. any special limit of liability described in this policy; or

d. the limit of liability applicable to the property.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

5. **Loss Clause.** The amount of insurance under this policy will not be reduced except for a total loss of a scheduled item. We will refund the unearned premium applicable to such item after the loss or you may apply

3

it to the premium due for the replacement of the scheduled item.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.

The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of your residence to select an umpire. The appraisers will then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.

If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by you and us.

7. **Your Duties After Loss.** In case a covered loss occurs, you must:

a. protect the property from further loss and take all steps possible to minimize the loss. Expenses incurred will be borne by you and us proportionate to our respective interests;

b. report as soon as practicable in writing to us or our agent any loss or damage which may become a claim under this policy (In case of theft, the police are also to be notified); and

c. file with us or our agent, within 90 days after discovery of the loss, a signed sworn proof of loss. This will state the facts and amount of the loss to the best of your knowledge.

8. **Examination Under Oath.** You agree:

a. to be examined under oath and subscribe to the same as often as we reasonably require;

b. that employees, members of your household or others will be produced for examination under oath to the extent that it is within your power to do so;

c. to produce, if requested, the remains of the covered property; and

d. to produce such records as we may need to verify the claim and its amount, and to permit copies of such records to be made if needed.

9. **Suit Against Us.** No action will be brought unless:

a. there has been compliance with the policy provisions; and

b. the loss has become payable as specified in the CONDITION entitled "**Loss Payment**".

Any action must be started within one year after the occurrence causing loss or damage.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your Proof of Loss and:

a. we reach agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

11. **Subrogation.** In the event of loss which we believe may be collectible from others, we may pay in the form of a loan to be repaid out of any recoveries from others. You will cooperate in every way possible to assist in such recovery from others. We will, at our expense, take over your rights against others to the extent of our payment.

12. **No Benefit to Bailee.** No person or organization having custody of the property and to be paid for services will benefit from this insurance.

13. **Other Insurance.** If at the time of loss or damage there is other insurance available which would apply to the property in the absence of this policy, the insurance under this policy will apply only as excess insurance over the other insurance.

14. **Cancellation.**

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice:

4

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or to our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

   (b) if the risk has changed substantially since the policy was issued.

   We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled by us, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation.

d. Sometimes the return premium is not refunded with the notice of cancellation or when this policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

15. **Non-Renewal**. We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

16. **Waiver or Change of Policy Provisions**. A waiver or change of any policy provision must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

17. **Liberalization Clause**. If we adopt a revision which would broaden coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

18. **Newly Acquired Property.**

   a. With respect to jewelry, furs, cameras and musical instruments, we cover newly acquired property of a class already covered. Coverage will not exceed 25% of the amount of insurance for that class of property or $10,000, whichever is less. You must:

      (1) report this newly acquired property to us within 30 days of acquisition; and

      (2) pay the additional premium from the date acquired.

   b. With respect to fine arts, we cover newly acquired property of this class if already covered. Coverage will not exceed 25% of the amount of insurance for this class. You must:

      (1) report this newly acquired property to us within 30 days of acquisition; and

      (2) pay the additional premium from the date acquired.

19. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits then this policy is void and we will not pay you or any other insured for this loss.

## SPECIAL CONDITIONS

1. **Fine Arts**. You agree that the covered property will be packed and unpacked by competent packers.

   We agree that the amount shown for each scheduled item is the value of the item.

   In case of the total loss of any item or items which are part of a set:

   a. we agree to pay you the full value of the set as shown on the schedule; and

   b. you agree to surrender the remaining items of the set to us.

2  **Golfer's Equipment**. Golfer's equipment includes golf clubs, golf clothing and golf equipment (not watches,

5

jewelry and stock for sale) which are your property. Your other clothing is covered while in a locker located in a building used in connection with the game of golf.

Golf balls are covered only if loss is caused by fire or burglary. Burglary coverage applies only if the golf balls are taken from within a building, room or locker by a person making unlawful entry by force. There must be visible marks of forced entry upon the premises.

3. **Musical Instruments.** You agree that no instrument played for pay during the policy term will be covered. This condition applies unless changed by endorsement and additional premium is paid at our current rates.

4. **Silverware.** Pens, pencils, flasks, smoking implements or accessories or items of personal adornment are not covered as "Silverware".

5. **Sports Equipment.** In case of loss we will pay no greater proportion of the loss than the amount of insurance bears to the actual value of the property at the time of loss.

6. **Stamp and Coin Collections.**

   a. We cover:

      (1) postage stamps and other philatelic property owned by or in custody or control of the Insured. This includes the books, pages and/or mountings used; and

      (2) rare and current coins, medals, paper money, bank notes, tokens of money and other numismatic property owned by or in custody or control of the Insured. This includes coin albums, containers, frames, cards and display cabinets in use with such collection.

b. In case of loss the amount payable will be determined as follows:

   (1) If loss is to a scheduled item we will pay no more than the amount shown.

   (2) If loss is to scheduled property described as pairs, strips, blocks, series, sheets, covers, frames, cards or the like, we will pay in the event of total loss no more than the amount shown. In the event of a partial loss we will pay no more than the cash market value of the whole set less the cash market value of the remainder at the time of loss. It is agreed that if the property is covered for less than the cash market value payment will be limited to the proportion that the amount of insurance bears to the cash market value.

   (3) In all other cases of loss to covered property, we will pay no more than the actual cash market value of the property at the time of loss. Payment will not exceed $250 for:

      (a) one stamp, coin or other individual article; or

      (b) one pair, strip, block, series, sheet, cover, frame, card or the like.

   (4) We will not pay a greater proportion of a loss on unscheduled property than the amount of insurance on that unscheduled property bears to the cash market value at the time of loss.

7. **Cameras.** You agree that no camera used for pay during the policy term will be covered. This condition applies unless changed by endorsement and additional premium is paid at our current rates.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as shown in the Declarations or Extension Certificate.

**Option I - Inflation Coverage.**

1. This option will apply only to those classes of property which indicate in the schedule that "Inflation Coverage Applies".

2. The amount of insurance applicable to those classes of property will be increased at the same rate as the increase in the inflation coverage index shown in the Declarations.

   a. To find the limits on a given date:

      (1) divide the index on that date by the index as of the effective date of the inflation coverage provision; then

      (2) multiply the resulting factor by the amount of insurance applicable to the property covered.

   The limits of liability will not be reduced to less than the amounts shown in the schedule.

   b. If during the term of this policy, you:

      (1) change the amount of insurance on any property to which Inflation Coverage applies; or

6

(2) add property to which Inflation Coverage applies;

the effective date of this Inflation Coverage on that property is changed to coincide with the effective date of the change or addition.

**Option Q - Broad Pair and Set Coverage.** In the event of the total loss of an item or items which are part of a pair or set, we agree to pay you the full amount of the value of such pair or set as specified in the schedule (IN ACCORDANCE WITH THE LOSS SETTLEMENT CONDITION).  You agree to surrender the remaining item or items of the pair or set to us.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Lynne M. Yousell*                          *Michael F Lynon*

                    Secretary                                    President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment is proper.

7

**IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS**
**CIVIL DIVISION**

**JOSHUA SHARP**                                                                         **PLAINTIFF**

**VS.**                          **CASE NO.** _____

**STATE FARM FIRE AND CASUALTY COMPANY**
**& JOHN DOES I-X**                                                                **DEFENDANTS**

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

**STATE FARM FIRE AND CASUALTY COMPANY**

A lawsuit has been filed against you.   The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the Complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brinkley Cook-Campbell
Law Offices of Craig L. Cook
319 N. 8th St.
Fort Smith, Arkansas 72901

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office
Crawford County Circuit Clerk
300 Main Street #22                              _____
Van Buren, AR 72956                            Signature of Clerk or Deputy Clerk

[SEAL]                          Date: _____



Arkansas Judiciary

**Case Title:**    JOSHUA SHARP V STATE FARM FIRE & CASUALTY
                   CO ETAL

**Case Number:**   17CV-17-587

**Type:**          SUMMONS - FILER PREPARED


So Ordered



KRISTEN EDWARDS

Electronically signed by KDEDWARDS on 2017-11-08 16:37:49    page 2 of 2